UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED

NOV 1 5 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-166-GWU

MARK D. STORMS,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to

1

Storms

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

Storms

evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into

account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at

387.

One of the detracting factors in the administrative decision may be the fact

that the Commissioner has improperly failed to accord greater weight to a treating

physician than to a doctor to whom the plaintiff was sent for the purpose of

gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654,

656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion

is based on objective medical findings. Cf. Houston v. Secretary of Health and

Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968,

973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on

the trier of fact only if they are not contradicted by substantial evidence to the

contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long

been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner

may assess allegations of pain. Consideration should be given to all the plaintiff's

symptoms including pain, and the extent to which signs and findings confirm these

symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a

claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Storms

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Storms

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Storms

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley  v. Secretary of Health and Human</u>

<u>Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mark D. Storms, was found by an Administrative Law Judge

(ALJ) to have "severe" impairments consisting of degenerative disc disease of the

cervical and lumbar spine and a history of carpal tunnel syndrome. (Tr. 17).

Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ

determined that Mr. Storms retained the residual functional capacity to return to his

past relevant work as an assistant restaurant manager and, therefore, was not

entitled to benefits. (Tr. 18-21). The Appeals Council declined to review, and this

action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of

the plaintiff's age of 34 years, high school education, and work experience could

perform any jobs if he were limited to "light" level exertion, and could only

occasionally climb ladders, stoop, or crawl. (Tr. 223-4). The VE responded that

such a person would be able to return to the plaintiff's past relevant work at the light

7

level as an assistant restaurant manager, and in the alternative, identified other jobs that the person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 223-5).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Storms alleged disability due to degenerative disc disease of the spine after an injury in July, 2003. (Tr. 73, 209). He testified to having excruciating pain, as well as numbness and burning in his legs, and had no improvement despite taking two or three Lorcet pain pills a day and having numerous epidural steroid injections. (Tr. 210-12, 219).

Medical evidence in the transcript shows that Mr. Storms was evaluated by Neurosurgeon Dr. William Brooks for neck and back pain in late 2002, but diagnostic studies showed only degenerative disc disease at L5-S1, and Dr. Brooks commented that surgery was clearly not an option, with no medication available that would affect a total and complete cure. (Tr. 108-13). Dr. Brooks stated that he would expect his patient to have exacerbations and remissions, but did not list any functional restrictions. (Tr. 108).

Dr. Brooks referred Mr. Storms to Dr. Rahul Dixit, a pain management specialist, who administered a number of spinal injections between December, 2002 and April, 2004. (Tr. 129-46). Mr. Storms reported a good response until July, 2003,

8

when he injured his back at work. (Tr. 141). Slightly more than a month later, Dr. Dixit felt Mr. Storms was improved enough to be released to "light duty work." (Tr. 137). He did not define "light duty," but noted in October, 2003 that Mr. Storms' employer would not accept the restrictions and he could not go back to work. (Tr. 135). An MRI showed only degenerative disc changes and bulging at L5-S1 (Tr. 147) and an EMG/NCV of the lower extremities was normal (Tr. 148-9). Dr. Dixit suggested a consultation with "neurology."

Dr. Brooks evaluated the plaintiff on November 12, 2003 and commented that his back pain "has continued to worsen with severe pain radiating to both lower exremities in an ill defined, non dermatomal distribution not usually associated with compression of the cauda equina or nerve root." (Tr. 123). He obtained a myelogram showing only "mild disc degeneration" with "no segmental instability or significant compressive element that would provide any anatomical/clinical correlation" for the plaintiff's pain. (Id.). Dr. Brooks added a note that the plaintiff had an appointment to see "Dr. Dixon" approximately eight months later, and would be "apparently unable to work until that time." (Id.) (emphasis added). He did not offer a functional capacity opinion himself.

Dr. Dixit saw the plaintiff several times in 2004, commenting in March that the plaintiff's pain was worsening and his imaging studies underrepresented his "clinical syndrome." (Tr. 130). However, the most recent note, dated April 16, 2004, states

that, although Mr. Storms walked with a very slow gait, that his lumbosacral spine range of motion was "grossly" decreased, and his straight leg raising test was positive at 70 degrees on the right, he was doing "OK" with conservative management. (Tr. 129).

State agency physicians reviewed the record at this point.

Dr. David Swan opined on June 7, 2004 that the plaintiff was capable of medium level work with occasional stooping. (Tr. 150-7). He stated that the plaintiff's most recent physical examination seemed to be from Dr. Dixit on April 16, 2004, and noted that this physician had released Mr. Storms to return to work on September 4, 2003. (Tr. 158-9). He gave Dr. Dixit only partial weight because he did not explain the meaning of "light duty." (Tr. 159).

Dr. John Rawlings reviewed the evidence on August 13, 2004 and restricted the plaintiff to light level exertion with only occasional climbing of ladders, ropes, and scaffolds, stooping, and crawling. (Tr. 161-9). He stated that he affirmed the assessment at the initial level with a "modification due to pain." (Tr. 162). The ALJ accepted the opinion of Dr. Rawlings.

Subsequently, evidence consisting of an "Incapacity Determination" dated July 25, 2005 was introduced from the state Cabinet for Health and Family Services, and was signed by James Ramsey, M.D. (Tr. 172). This report indicates that an examination in July, 2005 showed that the plaintiff had a very limited range of motion

10

due to back and leg pain, no atrophy or reflex abnormalities, and x-rays showed degenerative changes most noted at L4-5. (Id.). There was also evidence of carpal tunnel syndrome, and the "vendor" opined that Mr. Storms would likely have "difficulty with critical manipulations with repetitive gripping or vibrating tools." (Id.). The report stated that "a favorable decision is being made in order to allow Mr. Storms the opportunity to seek immediate aggressive medical treatment," including a referral to vocational rehabilitation for evaluation of possible retraining. (Id.). His case was to be reevaluated in December, 2005. (Id.). No specific functional restrictions were given.

Dr. Richard Park signed a residual functional capacity form on October 6, 2005, stating that the plaintiff had degenerative disc disease on an MRI and a myelogram which "prohibits bending on evaluation 2003" and also had radiculopathy on the left side. (Tr. 174). The assessment limited Mr. Storms to less than sedentary level lifting, less than full-time sitting, standing, and walking, and also placed a number of severe non-exertional restrictions, such as never climbing, balancing, crouching, or bending, with occasional kneeling and crawling, assigned a limited ability to reach, handle, feel, push, and pull, and limited him to no work at heights, around moving machinery, temperature extremes, or vibration. (Tr. 174-7). Dr. Park added that "per history can do only very sedentary activity." (Tr. 178).

11

Storms

The ALJ rejected the opinion of Dr. Park because there was no evidence of treatment from this source, and because the objective evidence, such as the MRI and myelogram cited by the physician, showed only mild degenerative disc disease and the EMG/NCV of the lower extremities was normal. (Tr. 18). Nor had any physician found any neurological abnormalities on examination. (Id.). She noted that the July, 2005 examination contained a reference to the plaintiff exhibiting significant pain behaviors and giving poor effort. (Id.). Therefore, these opinions were rejected.

On appeal, the plaintiff points out that Dr. Brooks' treatment notes were addressed to Dr. Richard Park (Tr. 108-11), and that the state agency reviewers relied upon by the ALJ did not have the benefit of a review of the entire record when they gave their opinion, citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Under the circumstances of this case, however, the ALJ could reasonably have rejected the opinion of Dr. Park, since there is no evidence that this physician actually examined the plaintiff, and he did not cite any objective evidence that was not available for review by the state agency physicians. Facially, Dr. Park could not be assumed to be more than another non-examining reviewer, as far as can be discerned from the evidence submitted to the ALJ. As such, his opinion is not entitled to the deference due to a treating source, or even to a one-time examining source. Moreover, there is an indication that Dr. Park was giving his restrictions

12

Storms

based on the history he had been given by the plaintiff. (Tr. 178). The "Incapacity Determination" from July, 2005, cites a medical evaluation by an unknown source, and, as the ALJ commented, did note "pain behavior and poor effort" while suggesting that the plaintiff be given a period of no more than six months for "aggressive medical treatment" and possible vocational retraining. (Tr. 172). Whatever else can be said about this report, it does not clearly suggest that the plaintiff was considered incapable of working for a twelve-month period.

The Court concludes that the administrative decision is supported by substantial evidence, and will be affirmed.

This the ___15___ day of November, 2006.

G. WIX UNTHANK
SENIOR JUDGE